## FLEET NATIONAL BANK *v.* VIJAY J. NAZARETH ET AL.
### (AC 22610)

Mihalakos, Flynn and Hennessy, Js.

Submitted on briefs September 16, 2002—officially released April 1, 2003

---

*Paul H. D. Stoughton* filed a brief for the appellants (named defendant et al.).

*Neil Paul* and *Michael J. Auger* filed a brief for the appellee (substitute plaintiff).

*Opinion*

MIHALAKOS, J. In this foreclosure action, the defendants Vijay J. Nazareth and Charmaine G. Nazareth[1] appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the substitute plaintiff, R. I. Waterman Properties, Inc. (plaintiff).[2] On appeal, the defendants claim that the court improperly (1) found an identity of interest between Fleet National Bank (Fleet National) and the plaintiff, and (2) found that the plaintiff had standing to foreclose the mortgage at issue.

The following facts and procedural history are relevant to our resolution of the defendants' appeal. On

---

[1] Bank One, USA, a subsequent encumbrancer of the real property at issue, also is a defendant. We refer in this opinion, however, only to the Nazareths as the defendants.

[2] Fleet National Bank initiated the original complaint. On December 11, 2000, R. I. Waterman Properties, Inc., was substituted as the plaintiff. We therefore refer to R. I. Waterman Properties, Inc., as the plaintiff.

October 14, 1994, the defendants executed a $184,000 promissory note and mortgage to Shawmut Mortgage Company (Shawmut). Prior to the commencement of this action, Shawmut merged with, and became, Fleet Mortgage Corporation (Fleet Mortgage). Fleet Mortgage assigned its interest in the defendants' mortgage, but not in the note, to Fleet National, which in turn assigned the mortgage to the plaintiff, a wholly owned subsidiary of Fleet National, which handles Fleet National's foreclosure accounts.

Fleet National initiated this foreclosure action due to the defendants' alleged failure to make required payments when they became due. The plaintiff then was substituted as party plaintiff. The parties agreed to a bifurcated trial, with the issue of liability to be tried first, and then, if the plaintiff prevailed, a hearing would be held to determine the debt and law days. The court found in favor of the plaintiff as to liability and subsequently held a hearing to determine the debt and law days. This appeal followed.

"We begin our analysis by underscoring that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Moreover, [t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent. . . . Standing

[however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 574, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998).

It is undisputed that Fleet Mortgage is the holder of the note, while the plaintiff is the holder of the mortgage. The plaintiff contends that it had standing to foreclose on the mortgage. In support of its claim, the plaintiff relies on *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996), rev'd after remand, 246 Conn. 594, 717 A.2d 713 (1998), and *Connecticut National Bank* v. *Marland*, 45 Conn. App. 352, 696 A.2d 374, cert. denied, 243 Conn. 907, 701 A.2d 328 (1997). The plaintiff's reliance, however, is misplaced. In both cases, there was evidence presented that the party seeking foreclosure had an interest in the note and the mortgage. In *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 759–60, the party seeking foreclosure had been assigned the note and the mortgage; however, the note was lost. In *Connecticut National Bank* v. *Marland*, supra, 359, we upheld the trial court's specific factual finding that the party seeking to foreclose the mortgage was the holder of the note and the mortgage. In this case, however, the plaintiff was never the holder of the note. The plaintiff has

failed to cite any authority, nor has our research found any, to support its claim that it has standing to foreclose on the mortgage without ever having been assigned the note.

Additionally, General Statutes § 49-17,[3] entitled "Foreclosure by owner of debt without legal title," provides an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him. Our legislature, however, has not passed similar legislation that would give the holder of the mortgage, without having been assigned the note, the ability to foreclose on the property. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996). We conclude, therefore, that the legislature did not intend to permit the holder of the mortgage, without having been assigned the note, the ability to foreclose on the property.

The judgment is vacated and the case is remanded with direction to render judgment dismissing the action.

In this opinion the other judges concurred.

---

[3] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."